UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FREDDIE O. CASTELLO, III                        CIVIL ACTION

VERSUS                                          NUMBER: 02-1082

CITY OF NEW ORLEANS,                            SECTION: "A"(5)
ET AL.

**REPORT AND RECOMMENDATION**

Freddie Castello, hereinafter referred to as plaintiff, has instituted suit against the City of New Orleans and its former Mayor, Marc Morial, concerning his arrest for begging on several occasions. (Rec. doc. 1). Although other defendants were originally named by plaintiff, they have been dismissed from this litigation on motion practice. (Rec. docs. 20, 28).

Plaintiff initially appeared before the Court pro se. Following a Spears[1]/ hearing with plaintiff and counsel for defendants, the Court appointed the Tulane Law Clinic to represent plaintiff. (Rec. docs. 43, 44, 47). As plaintiff defined the

---

[1]/ See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

issues at that time, he complained that the municipal ordinance under which he was arrested and charged was unconstitutional on its face.

Following the appointment of counsel, the Tulane Law Clinic filed a motion for summary judgment on behalf of plaintiff. (Rec. doc. 52).  In that motion it was contended that New Orleans Municipal Ordinance No. 54-411, i.e., begging, under which plaintiff was arrested and charged, is not unconstitutional on its face but is unconstitutional as applied to him. (Id.).

Plaintiff has contended throughout this litigation that he sells original poetry books to passers-by on the sidewalks of the French Quarter in the City of New Orleans.  He further has contended that he attempted to obtain a permit from the City to conduct this activity.  However, because the permit ordinance[2] does not provide for the issuance of a permit for the purpose plaintiff described to the permitting office personnel, he failed to obtain such a document.  No alternative permit was offered to

---

[2] City of New Orleans Permit Ordinance 30-69 provided in pertinent part as follows:
> [E]very person who shall desire to use the public streets, sidewalks or other public or private places of business establishments for the conduct of any of the businesses or callings hereinafter set forth or to hold meetings or rallies or public entertainment in private or public halls or places shall first apply to and obtain from the department of finance a permit.

plaintiff by the City.

Thereafter, however, while engaged in his selling activities for which the City would not grant him a permit, plaintiff has contended that he was arrested and charged with begging under Municipal Ordinance No. 54-411.[3]/  Plaintiff has further argued throughout this litigation that the City has been enjoined from enforcing its permit ordinance against others because the ordinance did not allow the selling of books anywhere in the City.  <u>Wexler v. City of New Orleans</u>, 267 F.Supp.2d 559 (E.D. La. 2003).  In his motion for summary judgment, Castello maintained that his arrest for begging was a "back door" effort to enforce an ordinance which has been declared unconstitutional in <u>Wexler</u>.  Therefore, the begging ordinance, as applied to the selling of books, the activity in which he was allegedly engaged at the time of his arrest, was

---

[3]/ City of New Orleans Municipal Ordinance 54-411 provides in pertinent part as follows:

> (a) It shall be unlawful for any person to commit the crime of begging as set forth herein.
> (b) Begging is the unauthorized solicitation for money or anything of value by any person.
> (c) No person shall stand, sit, or remain next to or in a roadway or street, or upon the shoulder of any street or roadway, or upon a neutral ground of any street or roadway for the purpose of begging, soliciting or otherwise requesting a ride, soliciting employment, making known his/her availability for employment, soliciting business or charitable contributions, or selling items or services to or from the drivers or occupants of any vehicle. ...

alleged by his court-appointed counsel to be unconstitutional as applied to individuals such as himself.

For its part, the City defended the motion for summary judgment by alleging that the motion filed by plaintiff's counsel exceeded the scope of the Court's mandate in appointing counsel and by arguing that there were material issues of fact which required that summary judgment be denied. (Rec. doc. 56).

In ruling on the pending motion, the Court first clarified the scope of counsel's initial appointment.  The order entered by the Court on February 2, 2004, stated that "the Tulane Law Clinic would be appointed to represent [Castello] for the sole purpose of briefing the constitutionality of the municipal ordinance under which he was arrested and charged."  (Rec. doc. 44)  The Tulane Law Clinic did that through the motion for summary judgment which it filed on plaintiff's behalf.

From reviewing counsel's memorandum, it appeared that there was no valid basis upon which to challenge the "begging" ordinance as being unconstitutional on its face, as had been plaintiff's initial contention.  However, the Court allowed counsel, on plaintiff's behalf, to raise the argument that, if plaintiff was arrested for "begging" merely because he was selling books without a permit, the "begging" statute was unconstitutional as applied to him.  The Court ultimately denied the pending motion for summary

judgment based upon the defendants' argument that there were outstanding issues of material fact which precluded rendering judgment in plaintiff's favor. (Rec. docs. 63, 71).

Thereafter, the Tulane Law Clinic withdrew as attorneys for plaintiff. (Rec. doc. 72). Subsequently, the Court held an evidentiary hearing, at which time plaintiff had the opportunity to introduce proof that he was arrested for selling books without a permit. (Rec. doc. 82). At this time, plaintiff was again appearing pro se. (Id.).

The Court notes that plaintiff at no time named as defendants herein any of the officers who arrested him. Rather, the City and its then Mayor, Marc Morial, were the only named defendants. As this matter was brought pursuant to 42 U.S.C. §1983, respondeat superior is not a concept under which plaintiff can establish liability. Wesson v. Oglesby, 910 F.2d 278, 283-84 (5th Cir. 1990); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990); Harvey v. Andrist, 754 F.2d 569, 572 (5th Cir.), cert. denied, 471 U.S. 1126, 105 S.Ct. 2659 (1985). Furthermore, plaintiff has never contended that the Mayor was personally involved in the incidents which caused him alleged damages. Therefore, in order to establish §1983 liability herein, plaintiff would have to prove the existence of a policy and/or practice on the part of the City to charge people with "begging" when they were actually selling legitimate items.

<u>Gelin v. Housing Authority of New Orleans</u>, 456 F.3d 525, 527 (5th Cir. 2006)(citing <u>Canton v. Harris</u>, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989)). Plaintiff made no attempt to establish that at the time of his hearing. Rather, Castello testified that the officers who arrested him had "misunderstood" what he was attempting to do and charged him with vagrancy. While this might have set forth a possible claim against the arresting officer(s), it does not set forth a causal connection between an unconstitutional policy maintained by the City and the damage allegedly caused to plaintiff. And, indeed, a "misunderstanding" is more in the nature of a negligence claim which, also, is not cognizable under 42 U.S.C. §1983. Such testimony is insufficient to meet any reasonable burden of proof which plaintiff must put forth in order to succeed with his claim.

RECOMMENDATION

It is recommended that the claims of plaintiff, Freddie Castello, against the City of New Orleans and its former Mayor, Marc Morial, be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B)(i).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that Such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this  3rd   day of    November    , 2006.

                                        ALMA L. CHASEZ
                       UNITED STATES MAGISTRATE JUDGE